Good morning, Your Honors. My name is Robert Powell, appearing here on behalf of Ms. Raffalano, the petitioner in this case. I would like to reserve five minutes by way of rebuttal. All right, Counselor, just realize that the time on the clock is your entire time. Okay, thank you. Ms. Raffalano presents three arguments in this case. I'll mention them and then discuss them in a little bit more detail. First of all, we maintain that Ms. Raffalano is eligible for adjustment of status, getting permanent resident status, under the V visa provisions of the Life Act that was enacted in December of 2000. How so? How is she eligible for that? Did she meet the requirements in terms of filing for the Life Act adjustment in the time? Did she file too early? No, there's nothing that would disqualify a person or make a person ineligible just because an application for adjustment of status was filed before the act. In fact, the Life Act was enacted in December of 2000, and about two months later, in February of 2001, Ms. Raffalano filed her application for adjustment of status.  Well, no. What she filed was an application for adjustment of status, the form I-485, an application to get permanent resident status in the United States. On what basis? Her basis is that she is married to a U.S. citizen. Her husband is a U.S. citizen, and so therefore she has the right to apply for adjustment of status. Okay. Now, does she also apply for the V visa status? Now, she has just recently done that. The process for obtaining that benefit under the Life Act is not clear. I mean, we submit that the statute allows for two steps in that process. First, it allows for what's called a V visa status, a period, while you're generally speaking, for people who are waiting until the priority date becomes current, until they become eligible to adjust status. So it does allow for some people to get that initial status, and then when the visa becomes available you take that second step and apply for permanent resident status. And that's what I wanted to be clear on. You're not saying that the V status would confer a right for adjustment of status. Well, it clearly allows a person to remain in the United States until the person becomes eligible for adjustment of status, and then at that point the person files for adjustment of status. Now, because Ms. Raffalano was eligible for adjustment of status when that law was passed, it seemed like, and she apparently thought, that she did not have to file an application for that first step, that V visa status, before she applied for adjustment of status. We submit that that's not necessary, but in light of the government's objections we have, and this just occurred to me in preparing for this argument, that, well, because the process is not crystal clear, maybe we should file the application for the V visa status, even though she was eligible for the second step at the time the law was passed. But don't we have to look at the record the way it existed at the time the ruling was made by the BIA? Well, and she's arguing that she's eligible for adjustment of status, and in her own right, or under the V visa program, because she was eligible for adjustment of status at the very time, she should be, that application should be approved. Counsel, was that argument made before the IJ and the BIA, the argument regarding the eligibility for adjustment of status under the LIFE Act? No, it was not. The proceedings in front of the immigration judge in the board of, well, the proceedings in front of the immigration judge occurred in September of 1995. So before this law had even been passed, there was no reason or no basis for her to make any argument about the V visa at the time of her hearing in front of the immigration judge. It's only later, five years later, in September of 2000, that Congress passed this law that would, that grants a benefit to her. Was that before the BIA ruling was made? And that's, well, there was no ruling before the BIA, because the order of the immigration judge was never appealed. Oh, I see. Okay. So you've got an application for adjustment of status in. What does that do? I mean, this is the procedurally most confusing immigration case I've yet run across. It is. And so you're here really on an appeal from a denial of a habeas petition. Now we've got the Real ID Act complicating exactly how you're here. But, okay, you're here somehow. And now we've got an application for adjustment of status in, which has nothing to do with the main issues as raised in the district court. What's the effect of the application? Well, the issue about the V visa was, in fact, there are two issues raised in the district court. Both of those were raised and addressed before the district court. But you're now talking about an application made subsequently. So this most recent application wasn't part of the district court's consideration. That's correct. That was not part of the district court, the proceeding in front of the district  And wouldn't affect our decision here. Well, if the government's position is that this V visa application has to be adjudicated I'm not sure if this is the government's position or not. But if it is, then that application has been filed. And I suppose this Court should wait, then, for a decision on that application. But Is that what you're requesting, that we wait for a decision on that application most recently? That's an alternative position. Initially, we maintain that Ms. Raffalano is, in fact, eligible for adjustment of status. That she should not have to file that initial V visa application. If this Court disagrees with that, then we would ask that the Court hold its decision until that V visa application is adjudicated. And it should definitely be approved. She's clearly eligible under the V visa provisions. The only argument that the government can make that she's not eligible is that the application for adjustment of status has been denied. Under the V visa program, a person is authorized to stay in the United States until the application for adjustment of status is adjudicated. If it's approved, then the person becomes a permanent resident, and that's fine. If the application is denied, and if it's a bona fide, a valid denial, well, then the person loses status and is subject to being removed from the United States. Now, under the V visa program, clearly Ms. Raffalano can stay in the United States until there's a decision on that application for adjustment of status. Now, the government has said, and the district court said, that there's been a denial of that application. Now, that's not really correct. What we have, and the government did just provide this morning another copy of an indication on the form I-485. This is the application for permanent resident status that Ms. Raffalano filed in February of 2001. According to a notation on here, it looks like the, well, what government counsel has added is terminated EOIR jurisdiction. Now, the import of that or the meaning of that is not entirely clear, but what is clear is that that's not a denial. I think we need to look at that in light of a couple other documents that are in the file. First of all, and this is in the excerpts of record on page 9, in the excerpts of record on page 9, there is a transmittal slip or some notes made by an adjudicator in the case. This says, Ms. Raffalano is attempting to adjust status, appears eligible under NACARA. Now, NACARA is a little bit confusing because NACARA is, technically speaking, another act different from the LIFE Act, although there were some NACARA amendments in the LIFE Act. So whether this means she's eligible under the LIFE Act or under NACARA is unclear, but clearly the adjudicator thinks that she's eligible, thinks correctly that she's eligible for adjustment of status. I'm not sure whether she needs to ask the court to reopen or whether the service needs to request termination. So let me go down either path. Suppose she was not denied status and it's still someplace within the E.O.R. adjudication system. Well, I'll even go beyond that because it's someplace within the executive branch adjudication system. Does that matter? Can you come to court and say, well, you can't remove Petitioner in the meantime because there's an application pending? Well, in this context, clearly, yes, because under the LIFE Act, as enacted by Congress, she has a period she's granted if she meets the requirements. But that's just if. Because I don't see a whole lot of actions being filed saying we meet the requirements so don't let them remove me. Well, that's exactly what the whole issue before the district court was about. Our claim was that she's eligible for adjustment of status. She's eligible for the benefits under the V-Visa program, and therefore the Immigration Service cannot remove her from the United States. Counsel, could you briefly discuss the voluntary departure wrinkle? That's a separate and independent argument that Ms. Raffalano has, independent of this V-Visa issue. There was an order of deportation, an order of voluntary departure that was issued in September of 1995, allowing her voluntary departure for one year. Now, if she departs from the United States during that period of time and she has voluntarily departed from the United States, then that order is satisfied. It's no longer in effect. Any step over the border, a voluntary departure in lieu of removal, in lieu of deportation? It's very clear that any departure across the border constitutes a voluntary departure from the United States. Even if you come back, right? Straight back? Well, I suppose you may want to draw some fine lines about stepping over the border and coming back within 10 seconds. Where a person has, and in fact, the Fluti case, for example, where a person went to Tijuana for an afternoon and came back into the United States, went from California into Tijuana and then back into the United States the same afternoon, that was regarded to be a departure from the United States. A different issue, but the Court clearly says any departure from the United States constitutes a departure. What case is that you're relying upon? I'm sorry? What case is that, Fluti? That's Rosenberg v. Fluti. That's not been cited in our materials. Oh. It doesn't help us very much. Okay. I'm sorry. And what do we do with the magistrate judge's findings that there was no voluntary departure? So we do submit and we argue in our briefs that those findings are clearly erroneous. But the one thing I would say is that even if we assume that those findings are not clearly erroneous, that Ms. Raffalano has not established that she departed in that one-year voluntary departure period time, it's still the magistrate judge clearly indicates that she did depart from the United States after that period of time. Assuming that that's correct, she left after the voluntary departure period of time, that constitutes a, quote, self-deportation. And that also satisfies the judgment against her. Once she departs from the United States, whether it's during the voluntary departure period time or after the voluntary departure period of time, that order of deportation is satisfied and it becomes a nullity. How does that affect, though, counsel, her ability to apply for adjustment of status? Well, it may affect it in different situations in different ways. In her situation, because of the life act, she would be eligible to apply for adjustment of status. If we assume that a voluntary departure order was not complied with, your position is that she would nevertheless be eligible to apply for adjustment of status? That's correct. And quite clearly, if the ñ when she's back into the United States, and this happens fairly regularly, people who are deported come back into the United States and file applications for various benefits if they're eligible. No, but I thought there was a bar. If you fail to depart within the period of voluntary departure, isn't there a bar for applying for adjustment of status? There is a bar. A person is ineligible for adjustment of status for a period of five years. Well, that five-year period, with respect to Ms. Raffalano, she was ineligible for adjustment of status for a period of five years, but that period has expired and now she is eligible for adjustment of status again. Counsel, I have a different question. The government indicates that she is not contesting the order of removal itself, but rather is contesting the Attorney General's execution of that order. Do you agree? Well, we agree with part of that, that she is not contesting the order of deportation that was issued in September of 95. And that's the reason why these provisions, the jurisdictional provisions, the REAL ID Act, is not relevant in this case. She's contesting her eligibility under the V visa program, first of all, and second, she's contesting whether or not there is an outstanding order of deportation against her at all because it's been satisfied because of her departure from the United States. The REAL ID Act is not applicable in this case? No, it would not be. And that's very clear under the REAL ID Act itself. It says where in habeas proceedings where a court is considering an issue, the REAL ID Act says that that part of the case that challenges the order of deportation, that gets shaved off and sent to the court of appeals. But the other issues, for example, the issue about her eligibility under the V visa program, which doesn't have anything to do with that order of deportation, and the issue about her departure from the United States and whether that order has been enforced or not is existing, those are not challenges to the order of deportation. And so, therefore, those issues remain in front of the district court. So the REAL ID Act does not affect the habeas court's jurisdiction of those issues. Well, it seems to me they have everything to do with the attempt to you're trying to prevent the government from removing her by arguing that we've got this adjustment of status and so forth. But it's hard for me to understand how that doesn't relate to an order of removal. Well, I think the Flournolic decision in the Seventh Circuit is relevant and helpful in understanding that. Where a person has – where Congress creates a benefit – in that case, it was the VAWA, the Violence Against Women's Act provision. Where Congress creates a benefit for individuals after a person has been ordered deported, and where an individual claims eligibility for those benefits, the claim arises under those – under those remedial provisions. So the – you know, the objection to the government's actions is not an objection – it's not based on the efforts to remove the person from the United States, but rather it's based on the claim arises out of those benefits, in this case, out of the LIFE Act. Well, Flournolic is not a REAL ID Act case. No, it's not. I read the REAL ID Act, and it seems to reach about as broadly as it can to say that is not in the district court. Jurisdiction for just about everything having to do with removal is here. Well, but again, understand the REAL ID Act addresses those cases where there's a challenge to the order of deportation. It does not – and it specifically makes it clear it does not reach those issues where the claim arises under some other act. The issue is the challenge to the order of deportation is the challenge that gets shaved off and sent to the court of appeals. The other claims in a case, a claim, for example, under the LIFE ID Act or the claim under the Violence Against Women's Act, which are adjudicated outside of the order of deportation that was issued, those claims remain in the district court. I do have three minutes I would like to reserve, some time for rebuttal. Thank you, counsel. Thank you. We'll hear from the government. Good morning, and may it please the Court. My name is Christopher Pickrell. I'm an assistant U.S. attorney here in Seattle. Maybe you could start with the argument that counsel was just addressing the REAL ID Act and its application to this case. We cannot see how REAL ID does not apply to this case. The relief that the Petitioner seeks in Sodom District Court was an order barring her deportation. So REAL ID, in our view, Your Honor, clearly applies. There are questions that are unanswered about the REAL ID Act, such as what is the record that is reviewed by the court of appeals? Since we filed our brief, this Court has issued a decision in a case called Alvarez Barajas, which says if you have a habeas appeal, an immigration habeas appeal pending on the date that the REAL ID was passed, we will construe it as a timely filed petition for review. So does that mean this Court is now treating this as a petition for review? It appears that way. What is the record? Well, we know Ms. Raffalano waived any appeal of the deportation order, so there is no BIA decision. What is the record? Well, we have a beautiful transcript from district court, three different judges. What do we do with that? Should this Court consider the evidentiary hearing that was held by the magistrate judge, or not consider that since the district court didn't have jurisdiction? Or does it? An answer without a question without a real clear answer, but wouldn't it be wasteful and really uneconomical to not take advantage of that transcript and three orders by three different federal judges who looked at the case and said, sorry, Ms. Raffalano, you have not sustained your burden of proving that you voluntarily departed. That outstanding deportation order of 1995 still exists, and you're trying to stop the government from enforcing it. I'm sorry you don't prevail on that argument. But if we take the REAL ID Act to put jurisdiction for that here, I take it that's a factual determination we're required to make in the first instance. We can look at the same evidence, but it sounds like it's a de novo decision by this Court as to factually whether she satisfied the requirement to depart. Is that your understanding? I wish I had a good understanding about that, Your Honor. It sounds very reasonable. Nobody set this up logically, because the REAL ID Act comes in halfway through and changes the rules. But as best I can piece it together, if jurisdiction, if we accept the government's requests here, not in the district court, then what the district court did doesn't have an effect. We can't apply a clearly erroneous test because they didn't have jurisdiction or don't have jurisdiction anymore. Now, I also understand the logic of what you say. We've got to develop factual record because there was an evidentiary hearing. I take it you are suggesting that we can take the evidence submitted by the parties through the hearing and otherwise in the district court proceedings and then evaluate for ourselves, make ourselves into a finder of fact, a role that the court of appeals is not very well suited for, but which the REAL ID Act appears to make us put in our future because there are bound to be factual-type questions that come up in some of these claims. And since you're suggesting that we take this evidence and make a determination of fact, you argue we should be the same as the determination made by the district court, that is, that she did not satisfy the requirement to depart. Is that the government's position? I believe it is, Your Honor, and without binding the government in all future cases, I think in this case, based on this record, which is an unusual record, obviously, that we have no objection to this Court sitting de novo and reviewing the evidence that was presented below. How would we do that? Would we take judicial notice of it? What procedural mechanism would we use to import the findings in the district court? How procedurally would that work? Every day this Court initially filed petitions for review, Your Honor, to review the certified administrative record, why couldn't this Court import the district court's fact findings and orders and call that the certified administrative record or at least certified record that comes before this Court? Well, the orders are tough because certified administrative record include orders by IJs and BIA that have authority to dispose of the cases in front of them. The current state of the law under the Real ID Act tells us the district court, although everybody thought at the time it had jurisdiction, that jurisdiction was taken away subsequent to the district court's determination. So I have trouble with the notion that we can import the orders in terms of a typical district court order that, for factual findings, we may review by a clear air standard. And I just – conceptually, that doesn't fit with something that belongs in this Court in the first instance. Now, I'm going at some length because to the extent that you can communicate back to Washington, this is a very odd fit to assign these factual finding responsibilities to the court of appeals. I think that's where we are right now, though. And I think we can all agree that this is a part of a very small subset of cases. This Court probably is not going to see cases like this in the future, or at least not very many of them, that are still in the pipeline, where a district court immigration habeas case went all the way to an evidentiary hearing. That is exceedingly rare. Roberts. Now, we have this case in front of us, and we have the Real ID Act, so the terrain has changed some. Does the government contest that this Court has jurisdiction over what I'll call the app – what Petitioner is putting in front of us as a petition for review? Does the government contest that we have jurisdiction over this as a petition for review? I think the government agrees that the Real ID Act specifically vests this Court with jurisdiction to consider the entire case. Okay. So now the case is in front of us, and there are two elements, as I understand it, to Petitioner's argument. One is the voluntary removal portion, the argument that she did depart – or voluntary departure portion, that she did depart, hence that's not been satisfied, so there's one that we can rely upon to kick her out now, and the other is the adjustment of status portion, saying subsequent events and the statutes passed by Congress opened the door and she should be allowed to stay at least while that's being resolved. And then we get to the sub-issue of whether or not there has, in fact, already been a resolution of that application. I invite you to pick which one you think you most need to deal with and use your time on that. First of all, let's focus on the – what the Real ID Act requires this Court to focus on. This Petitioner, her underlying deportation case was one that I would characterize as an old law case. The order was issued and became final in about 1995 before the so-called IRERA amendments. As to those cases, our understanding is that there was no deadline, no maximum number and no deadline for filing motions to reopen those proceedings. So at the time Ms. Raffalano suffered the adverse deportation order, why did she not move to reopen the proceedings? First of all, why didn't she appeal to the BIA and ultimately to this Court on a petition for review? Secondly, she had a window of opportunity to move for – to reopen. For more recent cases, we know that there are numerical and time limits for filing these motions to reopen. With regard to the adjustment of status issue, I'm afraid we have a parallel reality situation here. Our understanding is that the Life Act of 2000 covers situations in which an alien who is out of status or is in illegal status is married to a lawful permanent resident of the United States. And the Life Act would provide a qualified alien in that situation with an opportunity to stay here while the visa petition was adjudicated. Well, as a – Is that not the case here? That is not the case here. Ms. Raffalano by then was married to her husband and naturalized to U.S. citizenship. The distinction, Your Honor, is, as I best understand it, is that if you're – the non-immigrant that has a temporary visa to permit the person to stay here while the LPR's alien-relative petition was pending, well, if you're an alien – if you're an LPR, there's a system of preferences and – that requires, in many cases, a lengthy wait for your visa number to be – your priority number to come up. Are you suggesting the petitioner's situation got worse because her husband became a citizen? Exactly. Because the visa was immediately available to her. There was no waiting time because her husband was a U.S. citizen. So why didn't she get the visa? I share Your Honor's question to opposing counsel. Why didn't she apply for it? Well, she now has applied for it, it appears. And we know – Does that have any effect on what we should do? I don't think so. Our position is that if this Court finds, in whatever manner procedurally, finds that she did not voluntarily depart, that is the end of it because she still is within the statutory bar. Let me address one issue. The statute that we cited very clearly states that there's a 10-year bar from adjustment of status if you fail to voluntarily depart. My esteemed opposing counsel cites a section of the statute that he says it's a 5-year bar. I'm embarrassed to say that I looked for the statute that he cited and cannot find it. In fact, I believe it's been repealed. If I'm misstating that, and so we have a 10-year statutory bar, and if I'm erroneous in making that broad statement, I apologize to the Court and the counsel. But my understanding is it is indeed a 10-year bar. She's still within the 10-year bar. You can be eligible to apply for any kind of visa you want. A U.S. citizen could apply for a visa if he or she wanted. But whether that makes you qualified is a totally different question. So no – The statute in your brief that supports your position, the 10-year. Yes, it's in there. I'd like to make one correction to our brief. On page 13 at footnote 4, and I assume full personal responsibility for this mistake, in summarizing or discussing the Life Act, I mistakenly said that the Petitioner can be a U.S. citizen's husband of the alien. That was a misstatement. The Life Act applies to Petitioners who are lawful permanent residents who are petitioning for Life Act benefits on behalf of their out-of-status or illegal-status spouses. Your Honor, the Petitioner in this case had multiple opportunities to avoid the pickle that she is now in. Counsel, let me ask you this. If opposing counsel is right, if there was only a 5-year bar to application for adjustment of the status, do you lose? No, we don't lose, but obviously that helps their case and hurts ours. It would mean that, as I would characterize it, her status is that of an illegal alien presently in the country who has passed the 5-year bar to adjust status, but who now has filed a visa application, a visa petition, which is not an adjustment of status. It's only the first step in the process. And she has to go through additional hurdles, one of which, importantly, is that she can persuade the Attorney General to exercise discretion in her favor as far as adjusting her status. But if there's a 5-year bar to applying and the 5 years lapses while she's still here, then isn't she eligible to apply? I think in that instance she may very well have made an end run around the government. And so how does that affect this case that's before this Court? Applying for a visa is not, in this instance, a bar to removal. It doesn't provide an automatic stay of removal. She remains a deportable alien. And her argument that the government should be foreclosed from executing the 1995 order is what's before this Court. This Court says that order stands and she's 1995 order is in effect. She did not voluntarily depart. But must we consider the application that's now pending in answering that question? Our position is no, Your Honor. Our position is if this Court finds and holds that she did not voluntarily depart, that ends the inquiry and you need not even pass along to the adjustment of status issue. There was an adjustment. I mean, the application, the petition to the district court, which we're now, we accept the government's position on jurisdiction, taking as a petition for review to this Court does raise issues separate and apart from the voluntary departure. There's an effort to establish a basis for relief from the Court so that the application can be adjudicated, which is how we got into this whole issue of whether or not the Department has already denied this application or not. So it is true, is it not, that there's an argument as part of this petition beyond the voluntary departure argument? There certainly is. But is it necessary to this Court's disposition of this appeal? We say no, it is not. Entitled. I'm plainly not understanding something, because I take it you're not suggesting we're just allowed to disregard the fact of that argument. You're suggesting instead there's a reason why it should be set aside or that application or request for relief be denied. What's the reason that request should be denied? As far as the adjustment issue, Your Honor, this Court need not reach it, because if you conclude and hold that the Petitioner did not voluntarily depart and, therefore, the 1995 deportation order is still valid, she is, again, and this hinges, I guess, on the other statute that we've been talking about. Our position is she's still within the statutory bar to adjustment of status. So the Court need not proceed to the merits of her adjustment application. Or put another way, we can reject the adjustment argument based on our determination that she's still within the 10-year period. But that's something of an application of the law to the facts by us, whereas the Department was supposed to make that kind of determination in the first place. And the Department should have, had she filed a petition for review or a timely appeal to the BIA or a motion to reopen, and our position is she would have had ample time to file a motion to reopen, had she decided once again not to ignore U.S. immigration laws, but to just hide out. We thank the Court for its careful review of this case. It is an unusual case. I'm not so sure that we agree that it's a difficult case, but it is unusual, and we look forward to an intense review of this record. Thank you. Thank you, counsel. Rebuttal. Yes, Your Honors. First, let me say something about this issue of 5-year or 10-year ineligibility. I would just point out in the administrative record, I didn't include this in the excerpts of record, but in the administrative record at page L30, the immigration judge specifically tells Ms. Raffalano in his decision, says that there's a 5-year period of ineligibility for adjustment of status. That was the law at the time of the deportation proceeding. And is there a statute that supports that, or are you just relying upon the advice given by the IG? No. That was in accordance with the statute on the books at that time. And what is that statute? Government's counsel said they couldn't find it. I mean, do you cite it? I cite it in the record. I don't remember offhand. All right. Thank you. In our briefs. Cited in our briefs. I did want to say something on the Real ID Act, because I do think it would be a mistake for this Court to go down that path and make the decision on the basis of the Real ID Act. Let me just give briefly a little bit of background about the Real ID Act and what Congress was trying to accomplish. It addressed the questions where people were challenging orders of deportation. Now, generally speaking, the appeal from the order of deportation goes from the Board of Immigration Appeals to the Court of Appeals. But for certain individuals, people with criminal records, people who are deportable for criminal grounds would have to go to habeas first, challenging the order of deportation, and then to the Court of Appeals. So there's an extra step and a delay for people with criminal records or people who are challenging the order of deportation. So the Real ID Act addresses that issue. Those cases challenging the order of removal that previously went to habeas now go directly to the Court of Appeals, and all those cases get transferred to the Court of Appeals. But the Real ID Act, Section 106C, makes it clear that where you challenge other issues other than the order of removal, those cases remain in habeas proceedings. Section 106C says the district court shall transfer the case or the part of the case that challenges the order of deportation to the Court of Appeals. So those other issues, here the challenge under the Life Act, that remains with the district court in habeas proceedings. But it seems to me the hook to getting the district court in the first place was an effort to challenge the removal. Otherwise, you're not on a habeas petition. Well, she's constructed. I mean, I suppose the order of removal gives the court jurisdiction. A person is in ‑‑ I mean, technically speaking, a person can't file a habeas case unless you're, quote, in custody. Right. And the rule is that, well, once there's an order of removal against you, then you're, quote, in custody, and so you can bring a habeas case. But that's all that ‑‑ That's exactly what ‑‑ I look at, and I'm afraid I'm using the statutory numbers, so I'm going to give you back the wrong number, but I look at 1252b9, consolidated ‑‑ Right. Consolidation of questions for judicial review. And judicial review of all questions of law and fact, blah, blah, blah, blah, blah, blah, arising from any action taken or proceeding brought to remove an alien from that action taken to remove her from the United States. Well, that gives the court jurisdiction. But that's different from the claims that she's raising. Her challenges do not ‑‑ she's not bringing a challenge to the order of deportation. That, for her purposes, that was a valid order, and she doesn't have any objection or challenge to the validity of that September 1995 order. What she's challenging, her claim arises under the LIFE Act, the claim that she's eligible for LIFE Act benefits, and the Immigration Service has not properly adjudicated that case. Again, the ‑‑ Is there exhaustion of administrative remedies required if that should be the case? Well, perhaps so, but there are no administrative remedies that are available to her on that, so there's no administrative remedy for her to exhaust. So you're asking this Court, then, to make that decision, that her claim is under the LIFE Act, and this Court should decide if that is available to her or if she gets to change her status because of it? That's correct, Your Honor. We're claiming that the immigration ‑‑ that this Court should order the Immigration Service to hold that she's eligible for benefits under the LIFE Act and that the Immigration Service, and quite frankly, we don't care whether it's CIS or EOIR or whoever, but somebody has to adjudicate that application, and we submit that if that's honestly and validly adjudicated, she meets all of the requirements and she would be granted permanent resident status as Congress intended. This is Congress intended for people like her to be able to stay. Congress is harsh, but we don't have to destroy this family. Suppose you had a clear adjudication which was a denial. What could you do with that denial? What could you do to seek further review of that denial? I believe that that review ‑‑ it depends what the Immigration Service does in that situation. If the Immigration Service denies it in the context of removal proceedings by an immigration judge who looks at it and denies it ‑‑ Well, pass it. I mean, your case. Okay. So if CIS denies that application and says there's no further administrative review anywhere, then her options are, first of all, to file an APA Act, a declaration injunctive act, if she's not in custody. Or if she is in custody, then she can file a habeas petition. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is United States v. Rodriguez.
judges: Rawlinson, Clifton, Marshall